STATE

v.

**Edward H. SULLIVAN.**

**No. 86–168 C.A.**

Supreme Court of Rhode Island.

May 2, 1988.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Annie Goldberg, Asst. Attys. Gen., for plaintiff.

Joseph T. Houlihan, Edward J. Corcoran, Corcoran, Peckham & Hayes, Newport, for defendant.

## OPINION

FAY, Chief Justice.

This case comes before this court on an appeal by the defendant, Edward H. Sullivan, from a Superior Court jury conviction for the second-degree murder of twenty-nine-year-old Carol Ann Barlow. The defendant appeals his conviction on numerous grounds; however, this court affirms the conviction and will dispose of the appeal on the defendant's first three contentions.

This court will first address the question of whether the evidence proffered by the state, although circumstantial, warranted a denial by the trial justice of defendant's motion for a judgment of acquittal. Second, we shall address defendant's assertion that the trial justice improperly denied his request to instruct the jury on the elements of the time-barred lesser included offense of manslaughter. Last, we shall address defendant's contention that the state improperly denied his constitutional right to counsel under the United States Constitution by improper use of the grand-jury procedure to obtain from him incriminating statements concerning Carol Ann Barlow's death.

The facts of this case, really quite bizarre, are as follows. On June 12, 1977, an automobile collision occurred at approximately 10 p.m. on West Main Road in Middletown, Rhode Island. At first glance a car crash may not appear to be an extraordinary occurrence; however, the ensuing events read more like a mystery novel than a small-town police report.

Raymond Myers, accompanied by his wife, was driving his Pontiac station wagon in the southbound lane of West Main Road

in Middletown on the night and at the time in question. When he reached the site of the Bove Chevrolet dealership, a Ford Torino, traveling north with no headlights on and apparently with no operator behind the steering wheel, crossed over the dividing line and collided with his car. Myers stated that immediately after impact the Ford Torino backed up, moved in a "semi-circle," recrossed the northbound lane traveling in a southward direction, and proceeded into a dirt parking lot located across the street from the auto dealership. According to various witnesses at the scene of the collision, the car finally came to a halt in the southeastern corner of the lot with its front end pointing into that corner. Myers claimed that because of the suspicious circumstances surrounding the collision (no headlights and no apparent driver), he feared for both his wife's and his own safety, and thus he immediately fled from the scene of the accident. Fortunately, other passersby took concern and summoned the necessary emergency personnel.

When the rescue personnel arrived at the scene, they found Carol Ann Barlow gasping for air and slumped over in the front seat of the Ford Torino. Because her body was head down in the passenger's foot-well area, it was impossible to determine whether she was the operator of the vehicle. After being transported to Newport Hospital where hospital personnel took life-sustaining measures, Carol Ann Barlow died of internal injuries at 12:45 a.m.

An autopsy was performed the following day by the Rhode Island State Medical Examiner, Dr. William Q. Sturner. Doctor Sturner opined that Miss Barlow had died of internal hemorrhaging as a result of multiple fractures due to external trauma to the chest. Upon completing the autopsy on June 13, 1977, Dr. Sturner summoned the Middletown police into his office to discuss his findings. At this time the medical examiner expressed his opinion that the victim's injuries were not consonant with those that would have been anticipated as the result of an automobile collision as described. The medical examiner urged the police to investigate the accident further; however, all further inquiries proved futile, and Carol Ann Barlow's death was eventually listed as a traffic fatality. Raymond Myers subsequently pled guilty to the charges of having left the scene of an accident, death resulting, and driving with an invalid license.

On the evening of August 20, 1984, approximately seven years after the fatal accident, George Cardoza was in the Sun and Sand Bar in Middletown, Rhode Island, reminiscing with an old friend, defendant Edward H. Sullivan. Since Cardoza's sister was married to Carol Ann Barlow's brother and defendant was romantically involved with Barlow prior to her death, the conversation naturally drifted toward Barlow's demise and the suspicious circumstances surrounding it. Cardoza expressed his disbelief that Barlow had died in the automobile accident as reported by the police. Cardoza later testified that defendant replied, "No shit she was murdered in my apartment." Cardoza stated that upon hearing this statement, he began to "pump" defendant with more drinks in an attempt to elicit further details regarding Barlow's death. According to Cardoza, defendant then said that Barlow was with him at his apartment earlier in the evening of the accident and that an argument erupted there between her and Robert Tingley. Sullivan stated that this alleged argument was precipitated by Tingley's request for sexual favors from Barlow. Sullivan told Cardoza that when she refused his advances, Tingley "hauled off and belted her," knocking her to, what they believed to be, her death. Cardoza further stated that defendant told him that they "had to get rid of her" and that while Sullivan was driving the car with her body in it, he was involved in an accident. Sullivan stated that after the accident he backed the car across the street.

Cardoza relayed this information to his sister who, as previously stated, was Carol Ann Barlow's sister-in-law. She in turn notified the authorities, and on October 26, 1984, the Middletown police summoned Cardoza to the police station to obtain an official statement regarding what defendant said to him on August 20. Following

this, the police began a new investigation in which the automobile was recovered; the victim's body was exhumed pursuant to a court order, to be radiographed and reexamined by the medical examiner; and an accident-reconstruction expert was retained to analyze the accident.

The defendant was subsequently arrested on April 12, 1985, pursuant to a grand-jury indictment issued that same day.

The testimony at trial established that defendant and the victim were romantically involved for over three years. Witnesses testified that the two were together earlier on the night in question at a party on Third Beach in Newport, Rhode Island. Several witnesses also stated that the two had been involved in some sort of argument prior to Carol Ann's leaving the beach party alone. Apparently the two had been arguing over Carol Ann's having spent time inside a camper at the beach with another man prior to defendant's arrival at the party. Testimony elicited also established that defendant was an extremely strong man with a violent temper, who had previously struck the victim during heated arguments.

At trial the prosecution established through expert testimony that a "marked degree" of external force would have been necessary to inflict the fatal injuries, as described, upon the victim. That testimony also demonstrated that if the collision had caused those injuries to the victim, she would have been manually unable to operate the steering or accelerating mechanisms of the automobile and therefore incapable of driving it away after the collision.

The testimony of the accident-reconstruction expert conclusively established that the laws of physics prohibited the automobile from traveling the distance it did under its own power. Coupling these two facts, logic would dictate that the only feasible explanation for Carol Ann Barlow's death was that the fatal injuries were inflicted upon her by another person prior to her being placed in the automobile. Thus the final and most crucial element in the state's case was to prove beyond a reasonable doubt that defendant was responsible for

Carol Ann Barlow's death. We shall incorporate additional facts as needed to illuminate the pertinent issues.

■ We shall first address the circumstantial-evidence question. The defendant contends on appeal that the trial justice improperly denied his motion for a judgment of acquittal. He claims that the state's case against him was based on circumstantial evidence and that an inference existed that someone else had caused Carol Ann Barlow's death.

Although much of the evidence in the state's case in chief was circumstantial, this court has previously held that the state may base its case entirely upon circumstantial evidence without disproving every possible speculation or inference of innocence so long as the totality of the circumstantial evidence offered constitutes proof of guilt beyond a reasonable doubt. *State v. Caruolo*, 524 A.2d 575, 581 (R.I.1987); *In re Derek*, 448 A.2d 765, 768 (R.I.1982); *State v. DaRocha*, 121 R.I. 182, 187, 397 A.2d 500, 503 (1979). The crux of defendant's argument is that in order for the state to have built a solid case against him, it should have been established beyond a reasonable doubt that he alone struck the fatal blows with malice aforethought. In support of his argument defendant primarily relies on his previous statement to Cardoza in which he claimed that Robert Tingley inflicted those fatal blows. He contends that this statement established a fact capable of supporting a reasonable inference that is inconsistent with his guilt beyond a reasonable doubt and which in turn renders all other evidence in the case "speculative." Essentially defendant is attempting to dismantle the state's case by demonstrating a flaw in one of the primary premises in the state's inferential pyramid of guilt. *Caruolo*, 524 A.2d at 582; *State v. Alexander*, 471 A.2d 216, 218 (R.I.1984); *In re Derek*, 448 A.2d at 768. The defendant alleges that this purported flaw, that someone other than defendant rendered the fatal blows, makes it impossible for the state to complete the circumstantial case against him. In examining defendant's argument, this court notes, however, that any statement

by defendant would have been clearly self-serving and that Robert Tingley testified at trial that he only knew defendant as an acquaintance and that he was never in his apartment. Testimony also indicated that defendant had a conversation with Raymond Myers, the driver of the other automobile, approximately three weeks after the accident. During that conversation Myers told defendant that he saw someone running from the Ford Torino after it had come to a stop in the lot. Although Myers did not include this fact in his statement to the police regarding the accident, he did recite this fact to the attorney he retained to defend him on the traffic violation, and he also testified to it at trial. Thus the trial court could have reasonably inferred that defendant concocted the third-person story because he was aware of the possibility that he had been seen (although not identified) running from the automobile. We therefore hold that the trial justice correctly denied defendant's motion for a judgment of acquittal when the question was whether all the evidence taken in the light most favorable to the state could lead a jury to conclude defendant was guilty beyond a reasonable doubt of murdering Carol Ann Barlow.

■ The defendant also asserts on appeal that the trial justice improperly denied his request to instruct the jury on the elements of the lesser included offense of manslaughter.[1]

The defendant cites this court's recent holding in *State v. Hockenhull*, 525 A.2d 926 (R.I.1987), as precedent that compels a lesser-included-offense jury instruction, even when time barred. The defendant posits that *Hockenhull* mandates that omitting such an instruction would prejudice both the defendant and the prosecution by rendering a jury incapable of determining a defendant's true level of culpability. However, defendant misinterprets the *Hockenhull* holding. This court in *Hock-* *enhull* found that the trial justice erred when he failed to instruct the jury in accordance with Rhode Island practice concerning a lesser included offense. We therefore were precluded from addressing the lesser included offense as a constitutional issue. *Hockenhull*, 525 A.2d at 931.

The United States Supreme Court, as well as this court and numerous other jurisdictions, has held that a defendant is entitled to an instruction on a lesser included offense if the evidence warrants it. *Spaziano v. Florida*, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984); *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); *Keeble v. United States*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973); *Chaifetz v. United States*, 288 F.2d 133 (D.C.Cir.1960), *cert. denied in part and rev'd on other grounds*, 366 U.S. 209, 81 S.Ct. 1051, 6 L.Ed.2d 233 (1961) (*per curiam*); *Benes v. United States*, 276 F.2d 99 (6th Cir.1960); *State v. Lemon*, 497 A.2d 713 (R.I.1985); *State v. Tarvis*, 465 A.2d 164 (R.I.1983); *State v. Kaner*, 463 A.2d 1348 (R.I.1983); *State v. Austin*, 462 A.2d 359 (R.I.1983); *see Padie v. State*, 557 P.2d 1138, 1140 (Alaska 1976); *People v. Morgan*, 75 Cal. App.3d 32, 141 Cal.Rptr. 863 (1977); *Holloway v. State*, 362 So.2d 333 (Fla.Ct.App. 1978), *cert. denied*, 379 So.2d 953, *cert. denied*, 449 U.S. 905, 101 S.Ct. 281, 66 L.Ed.2d 137 (1980); *State v. Stillwell*, 175 N.J.Super. 244, 418 A.2d 267 (1980).

From its inception this rule has been employed as an aid to the prosecution. If the state failed to produce sufficient evidence to prove the crime charged, it might still persuade the jury that the defendant was guilty of something. *Spaziano*, 468 U.S. at 456, 104 S.Ct. at 3160, 82 L.Ed.2d at 350; *Beck*, 447 U.S. at 633, 100 S.Ct. at 2387, 65 L.Ed.2d at 400; *see also* 3 Wright, *Federal Practice and Procedure: Criminal* 2d § 515 at 20 n.2 (1982). The Supreme

---

1. General Laws 1956 (1969 Reenactment) § 12–12–17, as amended by P.L. 1974, ch. 118, § 11 provides:

"Period of limitations on minor offenses.—No person shall be convicted of any offense, except, treason against the state, murder, arson, burglary, counterfeiting, forgery, robbery, larceny, rape, or bigamy, either as a principal or as an accessory, unless indictment be found or an information filed against him therefor within three (3) years from the time of committing the same."

Court in *Beck* specifically recognized the danger that an unwarranted conviction may exist when a jury is presented with only two options—either guilty or not guilty. *Beck* 447 U.S. at 637, 100 S.Ct. at 2389, 65 L.Ed.2d at 402; *Keeble,* 412 U.S. at 212–13, 93 S.Ct. at 1998, 36 L.Ed.2d at 850. We note, however, that the *Beck* case dealt with capital punishment and that the risk of an unwarranted conviction could not be tolerated in a case in which the defendant's life is at stake. "[I]f the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction, [a state] is constitutionally prohibited from withdrawing that option from the jury in a capital case." *Beck v. Alabama,* 447 U.S. at 638, 100 S.Ct. at 2390, 65 L.Ed. 2d at 403. The facts in the case at bar are distinguishable from *Beck* in that the issue before this court is whether defendant is entitled to a lesser-included-offense instruction when the statute of limitations has barred prosecution for that lesser offense and there is no risk of capital punishment. We believe that to proffer such an instruction to a jury not only distorts the rationale for the rule but would, as the Supreme Court has suggested, seriously undermine the tenuous confidence the public already has in today's criminal-justice system. *Spaziano,* 468 U.S. at 456, 104 S.Ct. at 3160, 82 L.Ed.2d at 350. The Court in *Spaziano* specifically held that the purpose of the *Beck* rule was to eliminate the distortion of the factfinding process that is created when the jury is forced into an all-or-nothing choice between capital murder and innocence. *Spaziano,* 468 U.S. at 455, 104 S.Ct. at 3159–60, 82 L.Ed.2d at 349 (citing *Beck v. Alabama,* 447 U.S. at 638–43, 100 S.Ct. at 2390–92, 65 L.Ed.2d at 406–07). The Court, further adding that to require that the jury be instructed on lesser included offenses for which the defendant may not be convicted would introduce another type of distortion into the factfinding process, stated:

> "We reaffirm our commitment to the demands of reliability in decisions involving death and to the defendant's right to the benefit of a lesser included offense instruction that may reduce the risk of

unwarranted capital convictions. But we are unwilling to close our eyes to the social cost of petitioner's proposed rule. *Beck* does not require that the jury be tricked into believing that it has a choice of crimes for which to find the defendant guilty, if in reality there is no choice." *Spaziano,* 468 U.S. at 456, 104 S.Ct. at 3160, 82 L.Ed.2d at 349.

The defendant in his brief relies on an Alaska Supreme Court holding that also addressed the time-barred-lesser-included-offense situation. *See Padie v. State,* 557 P.2d 1138 (Alaska 1976). We have reviewed *Padie* thoroughly and find that not only does defendant essentially misread it but that the decision is consonant with our holding today. Although the defendant in *Padie* was granted relief by way of new jury instructions, the Alaska court specifically disallowed any instructions on the time-barred lesser offense. The defendant in *Padie* was on trial for murder and petitioned the Supreme Court of Alaska for consideration of whether the trial judge may have charged the jury on the elements of manslaughter, which in that situation would have been a time-barred lesser included offense. That court stated:

> "[j]ust as a defendant may not be charged with a time-barred offense, he may not be convicted of it, even as a lesser offense included in one which is not time-barred." 557 P.2d at 1140.

The only relief granted to the defendant in *Padie* was to refashion the jury instructions regarding the mitigating effects of passion and provocation relating to a charge of homicide. The court found that the instruction avoided the problem of the time-barred lesser included offense because if the defendant on remand did provide evidence of passion and provocation in the homicide, then the jury would have to acquit him rather than find him guilty of manslaughter. *Padie,* 557 P.2d at 1142. That court further agreed with a Federal District Court case that held that if the defendant could not be convicted of a time-barred lesser offense, the jury could not even be told of it because all jury instructions must accurately reflect the law. *Id.*

(citing *Chaifetz v. United States,* 288 F.2d 133 (D.C.Cir.1960)).

We therefore hold that the trial justice committed no error when he refused the requested instruction by defendant on the time-barred lesser included offense.

█ The defendant alternatively argues in his brief that the state improperly denied his constitutional right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution by improper use of the grand-jury procedure to obtain incriminating statements from him concerning his involvement in Carol Ann Barlow's death. The defendant alleges that the manner in which he was arrested and questioned led him to believe that he was merely a suspect and that the authorities in actuality sought his cooperation against Tingley. Thus defendant argues that through his efforts to cooperate with the police he made contradictory statements about his own involvement in Barlow's death and that the state's entire theory of prosecution had changed with his becoming the prime suspect. The defendant asserts he was improperly prosecuted because he was informed only that he was a suspect and not that he was indicted for Carol Ann Barlow's murder and as such it is unlikely that he would have talked to the police.

The facts of this case clearly establish that this argument lacks merit. Evidence was adduced that the defendant signed a *Miranda* rights form, which informed him he was indicted by the grand jury for the murder of Carol Ann Barlow. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The defendant also stated numerous times that he knew his rights and that he would like to take a polygraph test, and approximately six hours into the interrogation he asked for an attorney. At that time all questioning stopped, and he was permitted a telephone call to obtain counsel. We therefore hold that the trial justice correctly exercised his discretion when he conducted an examination, outside the presence of the jury, of the totality of the circumstances surrounding the interrogation in an attempt to ascertain whether the defendant voluntar-

ily waived his right to remain silent and have assistance of counsel. *State v. Ferola,* 518 A.2d 1339, 1345 (R.I.1986) (citing *State v. Verlaque,* 465 A.2d 207, 209–10 (R.I.1983)). This court upon review may set aside the trial justice's findings of fact if he or she is clearly wrong. 518 A.2d at 1345. The evidence in this case, however, amply supports the finding of voluntariness.

Based upon the foregoing analysis the judgment of conviction is affirmed, and the papers in the case are remanded to the Superior Court.