*992 A.2d 821*

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. E.W., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 16, 2009—Decided April 27, 2010.

Before Judges PAYNE, MINIMAN and WAUGH.

*Christopher J. Turano*, Designated Counsel, argued the cause for appellant (*Yvonne Smith Segars*, Public Defender, attorney; *Sean R. Kelly*, Designated Counsel, on the brief).

*Nidara Y. Rourk,* Assistant Prosecutor, argued the cause for respondent (*Edward J. DeFazio,* Hudson County Prosecutor, attorney; *Ms. Rourk,* on the brief).

The opinion of the court was delivered by

PAYNE, J.A.D.

Defendant, E.W., a convicted sex offender, appeals from the denial of his petition for post-conviction relief (PCR) as untimely. *See R.* 3:22–12 (establishing a five-year general time limitation). Defendant was indicted on January 8, 1992 for various sexual offenses committed on his daughter, L.W., commencing in 1977 when the daughter was four and continuing to 1991. He also was indicted for committing an act of sexual assault on T.E., his daughter's friend, in violation of *N.J.S.A.* 2C:14–2b and committing an act of criminal sexual contact on T.E. in violation of *N.J.S.A.* 2C:14–3b. The assaults against T.E. occurred in 1979. Following trial, defendant was found guilty on all counts.[1]

Defendant was sentenced on February 26, 1996 to concurrent twenty-year terms in custody at the Adult Diagnostic and Treatment Center (ADTC) with a ten-year parole disqualifier for crimes committed against his daughter consisting of two counts of first-degree aggravated sexual assault in violation of *N.J.S.A.* 2C:14–1a(1) and (2) and to a consecutive ADTC sentence of ten years with a five-year parole disqualifier for second-degree sexual assault against T.E. in violation of *N.J.S.A.* 2C:14–2b. Defendant's remaining convictions were merged with those upon which he was sentenced.

Defendant's convictions and sentence were affirmed on appeal to us in an unpublished opinion issued on March 22, 1999. *State v. E.W.,* No. A–5109–95 (App.Div. March 22, 1999). A motion for reconsideration was denied on May 20, 1999. Defendant's petition for certification was denied as untimely.

---

[1] Count 7, charging criminal sexual contact with L.W. by use of physical force or coercion, in violation of *N.J.S.A.* 2C:14–3b, was dismissed at trial.

On December 3, 2007, defendant filed a petition for post-conviction relief, which, as we have stated, was also denied as untimely. He has appealed.

On appeal, defendant sets forth, in Point I, the standard of review, and he then makes the following legal arguments:

II. DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF IS TIMELY.

A. As to Convictions for Crimes Against T.E., the Five–Year Time Bar Should Be Relaxed Because Defendant's Sentences Are "Illegal Sentences" and May Be Corrected at Any Time.

B. As to Convictions for All Crimes, "Excusable Neglect" Exists to Explain Why Defendant Failed to File for PCR Within The Five–Year Time Period.

III. DEFENDANT'S CONVICTIONS AND SENTENCES FOR CRIMES AGAINST T.E. MUST BE REVERSED AND VACATED BECAUSE HE WAS INDICTED WELL BEYOND THE APPLICABLE STATUTE OF LIMITATIONS.

IV. DEFENDANT'S CONVICTIONS [AND] SENTENCES FOR CRIMES AGAINST L.W. MUST BE REVERSED, VACATED AND REMANDED FOR A NEW TRIAL BECAUSE THE STATE WRONGFULLY WITH-HELD EXCULPATORY EVIDENCE.

A. The State Violated Its Duty To Disclose The Ramirez Report Pursuant To New Jersey Court Rule 3:13–3.

B. The State's Failure To Disclose The Ramirez Report Amounts To Wrongful Withholding of Exculpatory Evidence, *Contrary To The Constitutional Principles of Brady v. Maryland*, And Warrants A New Trial.

We affirm in part and reverse in part.

I.

■ We first address defendant's conviction for second-degree sexual assault on T.E. in violation of *N.J.S.A.* 2C:14–2b. It is defendant's position that prosecution for that crime, which the victim agrees occurred during the school year that concluded in June 1979, was time barred. In this regard, defendant notes that, because his crime was committed prior to September 1, 1979 when the New Jersey Code of Criminal Justice was adopted as Title 2C, it should have been prosecuted under the prior version of the New Jersey Criminal Code set forth in Title 2A. The statute of limitations applicable at that time stated:

[N]o person shall be prosecuted, tried or punished for any offense not punishable with death, unless the indictment therefore shall be found within five years from the time of committing the offense. . . . This section shall not apply to any person fleeing from justice.

[*N.J.S.A.* 2A:159-2, repealed by *L.* 1978, *c.* 95, § 2C:98-2, eff. Sept. 1, 1979.]

Thereafter, *N.J.S.A.* 2C:1-6 provided in relevant part:

a. A prosecution for murder may be commenced at any time.

b. Except as otherwise provided in this section, prosecutions for other offenses are subject to the following periods of limitations:

(1) A prosecution for a crime must be commenced within 5 years after it is committed;

\* \* \*

d. A prosecution is commenced for a crime when an indictment is found. . . .

[*L.* 1979, *c.* 178, § 5.]

The statute remained in this form until 1986, when it was amended as follows:

a. A prosecution for murder may be commenced at any time.

b. Except as otherwise provided in this section, prosecutions for other offenses are subject to the following periods of limitations:

(1) A prosecution for a crime must be commenced within five years after it is committed;

\* \* \*

(4) A prosecution for an offense set forth in N.J.S. 2C:14-2 or N.J.S. 2C:14-3, when the victim at the time of the offense is below the age of 18 years, must be commenced within two years of the victim's attaining the age of 18 years or within five years after the crime is committed, whichever date is later.

[*L.* 1986, *c.* 166, eff. December 3, 1986.]

As we have stated, defendant was indicted on January 8, 1992.

We discussed the applicability of the 1986 extended statute of limitations in *State v. Nagle,* 226 *N.J.Super.* 513, 545 *A.*2d 182 (App.Div.1988), a case involving a crime committed slightly less than five years before the effective date of the 1986 statute. There, we rejected defendant's argument that the amended statute should not be retroactively applied, determining that "the Legislature's purpose was to remedy what it saw as a serious problem arising in the prosecution of sexual crimes with young

victims." *Id.* at 515, 545 *A*.2d 182. We noted that the Senate's Statement accompanying the original bill said:

> Present law requires prosecution of these crimes to be commenced within five years after commission. Unfortunately some of the victims of these heinous crimes are so young, that they are unable to understand the nature of the crimes perpetrated against them within that time. This bill enables the victim to mature and understand the criminal nature of the actions prior to prosecution.
>
> [*Nagle, supra,* 226 *N.J.Super.* at 515, 545 *A*.2d 182.]

We held as a result that the Legislature intended the amended statute to apply to already committed crimes, and that it had no reason to withhold the remedial measure from reachable situations. *Id.* at 516, 545 *A*.2d 182.

> No one can place legitimate reliance on the protection of a criminal statute of limitations that has not yet run. In these circumstances, the Legislature had no reason to withhold application of its amendment from crimes already committed but not yet prosecuted.
>
> [*Ibid.*]

We next addressed whether our interpretation of the amended statute as retroactively applicable created an *ex post facto* problem. In doing so, we distinguished between applying an extended statute of limitations to a crime after the prior statutory period had expired and applying such a statute before the original period of limitations had ended. We found the latter to raise no *ex post facto* concerns, but reached a contrary conclusion with respect to the former. In doing so, we quoted Judge Learned Hand, who stated:

> Certainly it is one thing to revive a prosecution already dead and another to give it a longer lease of life. The question turns upon how much violence is done to our instinctive feelings of justice and fair play. For the state to assure a man that he had become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest; but while the chase is on, it does not shock us to have it extended beyond the time first set, or if it does, the stake forgives it.
>
> [*Id.* at 517, 545 *A*.2d 182 (quoting *Falter v. United States,* 23 *F*.2d 420, 425–26 (2d Cir.), *cert. denied,* 277 *U.S.* 590, 48 *S.Ct.* 528, 72 *L.Ed.* 1003 (1928)).]

If *Nagle* is applied to the present matter, it is clear that prosecution of defendant for the sexual assault committed on T.E. should have been barred. More than five years had elapsed between 1979 when the crime was committed and the passage in 1986 of the amended version of *N.J.S.A.* 2C:1–6 extending the

statute of limitations for crimes violating *N.J.S.A.* 2C:14–2 and –3.
Thus that amended statute of limitations did not serve to increase
the period during which defendant could be prosecuted for this
particular crime. Rather, prosecution was barred by *N.J.S.A.*
2A:159–2 and the initial version of *N.J.S.A.* 2C:1–6b.[2]

We have incorporated similar principles in discussing the issue
of whether an indictment for murder, for which there is no statute
of limitations, bars a conviction for the lesser included offense of
manslaughter if the indictment is returned more than five years
after the commission of the offense and is thus time barred
pursuant to *N.J.S.A.* 2A:159–2. *See State v. Stillwell,* 175 *N.J.Super.* 244, 418 *A.*2d 267 (App.Div.1980). There, we held:

> The majority rule is that a person cannot be convicted of a lesser offense on a
> prosecution for a greater crime which includes the lesser offense, commenced after
> the statute of limitations has run on the lesser offense. The rationale underlying
> the rule is that "a statute of limitations in a criminal case, unlike such a statute in
> civil matters, is not merely a statute of repose but creates a bar to prosecution."
> *Chaifetz v. United States,* 288 *F.*2d 133, 135–36 (D.C.Cir.1960), *cert. denied and
> rev'd on other grounds,* 366 *U.S.* 209, 81 *S.Ct.* 1051, 6 *L.Ed.*2d 233 (1961). It is well
> settled in this State that there is an absolute bar to prosecution after the statute
> has run, *State v. Zarinsky,* 75 *N.J.* [101,] 107[, 380 *A.*2d 685] [ (1977) ]; *see In re
> Pillo,* 11 *N.J.* 8, 17–18[, 93 *A.*2d 176] (1952); *Moore v. State,* 43 *N.J.L.* 203, 209 (E.
> & A. 1881), and, therefore the statute can be asserted at any time, before or after
> judgment.
>
> [*Stillwell, supra,* 175 *N.J.Super.* at 251, 418 *A.*2d 267.]

The Supreme Court reached a similar result in *State v. Short,*
131 *N.J.* 47, 618 *A.*2d 316 (1993). In that case, the defendant,
tried for murder, sought a jury instruction as to all lesser-included
offenses, even though the statute of limitations had expired on the
lesser-included offense of manslaughter. The judge agreed, but
instructed the jury that if it found the defendant guilty of man-
slaughter, he would go unpunished as the result of the then-
applicable five-year statute of limitations bar. Following his

---

[2] The United States Supreme Court has held that "a law enacted after
expiration of a previously applicable limitations period violates the *Ex Post Facto*
Clause when it is applied to revive a previously time-barred prosecution."
*Stogner v. California,* 539 *U.S.* 607, 632–33, 123 *S.Ct.* 2446, 2461, 156 *L.Ed.*2d
544, 565 (2003).

conviction for murder, the defendant appealed, arguing that he was entitled to the instructions on lesser-included offenses and to the preservation of his statute of limitations defense to manslaughter, but that the consequence of that defense should not have been disclosed to the jury. The Court agreed. *Id.* at 58, 618 *A.*2d 316.

The Court's discussion of the effect of the statute of limitations has particular relevance here. The Court stated:

> We have ruled in civil cases that statutes of limitations create vested rights of which litigants cannot be deprived. . . .
>
> Those principles have even greater force in criminal cases, for in criminal cases, unlike civil cases, a person's liberty is at stake. Just as the constitutional prohibition against *ex post facto* laws would bar the legislature from taking away a right under a statute of limitations, *See In re Coruzzi*, 95 *N.J.* 557, 577–79[, 472 *A.*2d 546] (1984), so would the vested rights doctrine foreclose a court's unilateral deprivation of that right.
>
> Moreover, in New Jersey, the statute of limitations in a criminal statute is tantamount to an absolute bar to the prosecution of the offense. *State v. Zarinsky*, 75 *N.J.* 101, 107[, 380 *A.*2d 685] (1977); *In re Pillo*, 11 *N.J.* 8, 17–18[, 93 *A.*2d 176] (1952); *State v. Stillwell*, 175 *N.J.Super.* 244, 249–50[, 418 *A.*2d 267] (App.Div. 1980); *Moore v. State*, 43 *N.J.L.* 203, 209 (E. & A. 1881). The statute of limitations on criminal prosecutions is more than merely an affirmative defense to be asserted by a defendant, and the court cannot unilaterally nullify that protection. To be sure, the legislature need not have created any statute of limitations at all for the crime of manslaughter, but once it had, the statute became binding on the courts. [*Short, supra,* 131 *N.J.* at 54–55, 618 *A.*2d 316.]

In discussing its determination that the jury should not be instructed as to the penal consequence of a finding of manslaughter, the Court observed that it was not endorsing the "tricking" or "deceiving" of juries. *Id.* at 60, 618 *A.*2d 316. The Court stated:

> We agree with the Wisconsin Supreme Court's resolution of these issues. "Whether a defendant is entitled to a lesser included offense instruction and whether the statute of limitations has run on a crime are two separate questions." [*State v.] Muentner,* [138 *Wis.*2d 374,] 406 *N.W.*2d [415,] 420 [ (Wis.1987).] In New Jersey, as in Wisconsin, the "jury operates independently of sentencing and punishment concerns." *Id.* at 423. And in New Jersey, as in Wisconsin, "the running of the statute of limitations does not preclude the jury from reaching a verdict convicting the defendant of a crime; it rather precludes the trial court from entering a judgment of conviction on the finding of guilt." *Id.* at 421.
> [*Short, supra,* 131 *N.J.* at 62, 618 *A.*2d 316.]

■ As defendant notes, *Rule* 3:22–12 provides that: "A petition to correct an illegal sentence may be filed at any time."

Moreover, *Stillwell* establishes that the statute of limitations may be asserted at any time before or after judgment. *Stillwell, supra,* 175 *N.J.Super.* at 251, 418 *A.*2d 267. While the jury reached a verdict against defendant in connection with the time-barred claim that defendant sexually assaulted T.E., if the bar of the statute of limitations had been asserted then, the trial court would have been precluded from entering a judgment of conviction on the jury's finding of guilt. *See Short, supra,* 131 *N.J.* at 62, 618 *A.*2d 316. The sentence is no less illegal because the bar of the statute of limitations has only now been raised. As a consequence, we reverse defendant's convictions in connection with crimes committed on T.E. in 1979 because they are time-barred, and we vacate the ten-year sentence imposed as a result.

## II.

■ *Rule* 3:22–12 provides that, with the exception of a petition to correct an illegal sentence, "[n]o ... petition shall be filed pursuant to this rule more than 5 years after rendition of the judgment or sentence sought to be attacked unless it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect." Defendant alleges "excusable neglect" in this case resulting from medical disabilities consisting of a substantial hearing loss, diagnosed in April 2008; glaucoma, diagnosed in 1995; cataracts, diagnosed in 2002–2003, with surgery to one eye in February 2008; acute retinopathy, diagnosed in July 2004; severe hypertension, diagnosed in 2001; diabetes, untreated until February 2007; and osteoarthritis at L4, diagnosed in 1999. Defendant also claims psychiatric disabilities associated with his underlying criminal conduct and conviction and post-traumatic stress disorder arising from service in Vietnam. As a final matter, he claims restrictions in his ability to conduct legal research at the ADTC, or to commission such research from others.

We note, however, that defendant's disabilities have not prevented him from mounting a legally sophisticated and extensive

challenge to the use of religiously-based programmatic materials at the ADTC that is still ongoing. *See E.W. v. N.J. Dept. of Corrections,* No. A–4875–04 (App.Div. August 8, 2008). Further, we note that defendant has not supplied medical records in connection with his claims of disability, and he has not provided evidence that would permit us to conclude that his disabilities have substantially interfered with his ability to prosecute this matter. *See State v. D.D.M.,* 140 *N.J.* 83, 100, 657 *A.*2d 837 (1995). When we consider the cause and extent of the delay in seeking PCR, the prejudice to the State in retrying a case of the age of this one, and the relative unimportance of defendant's claim of injustice, a matter that we will analyze next, we find inadequate grounds to relax the Rule's time limits in this case. *State v. Murray,* 162 *N.J.* 240, 249, 744 *A.*2d 131 (2000); *State v. McQuaid,* 147 *N.J.* 464, 485, 688 *A.*2d 584 (1997); *State v. Mitchell,* 126 *N.J.* 565, 580–81, 601 *A.*2d 198 (1992).

## III.

We nonetheless address defendant's claims that the State violated its duty to disclose discovery pursuant to *Rule* 3:13–3 when it allegedly failed to disclose the police report of P.C.T. Ramirez regarding his initial interview of defendant's daughter, L.W., on July 29, 1991; that the Ramirez report contained exculpatory *Brady*[3] material; and as the result of non-disclosure, a new trial must be ordered.

Defendant offers no proofs, such as a transmittal letter, a transcript reference, a certification by counsel, or other evidence, to support his claim that the Ramirez report was not supplied to defense counsel prior to trial. Further, defendant claims that he commenced his post-conviction requests for discovery in his case on February 26, 1993, and although he lists the persons to whom he addressed letters and motions and the dates of those letters and motions, he does not provide copies of any. That the corre-

---

[3] *Brady v. Maryland,* 373 *U.S.* 83, 83 *S.Ct.* 1194, 10 *L.Ed.*2d 215 (1963).

spondence and motions referenced the allegedly missing report or otherwise challenged the adequacy of the State's production of discovery thus cannot be verified. Additionally, defendant alleges that he first became aware of the Ramirez report during a therapy session in 1998 or 1999. However, he does not address why his therapist would have a copy of a police report that had not been supplied to defendant in discovery, and defendant does not address why he did not obtain a copy of the police report then, rather than in 2002 when the report was allegedly furnished to him. Finally, defendant does not give any substantial reason for the delay from 2002 to 2008 in seeking post-conviction relief on the basis of the report. We therefore question whether the report was in fact withheld and further question whether defendant understood the report to have the exculpatory value he now attributes to it.

Our examination of the report discloses that it was taken at 5:30 p.m. on July 29, 1991. The report states that, at the request of L.W.'s father, she went to his residence, where she was informed that her father and mother were divorcing. At that time, the father accused L.W. and her boyfriend of planning to kill him. He then stated that he was not going to wait for that to happen, but would kill her first. L.W. then left the house and came to the police station, crying and scared. At the police station, L.W. told Ramirez that her father had been molesting her since she was four years old, fondling her breasts, rear end and her vagina. Her father had also forced L.W. to have oral sex with him. When she was approximately ten years of age, her father forced L.W. to have oral sex with her female friend, J.Y., while he watched, and then he forced J.Y. to have oral sex with him. Additionally L.W. stated that her father had also molested her younger sister.

On one occasion, L.W.'s mother caught the father forcing L.W. to fondle him when L.W. was fourteen years of age. The mother threatened to call the police, but the father promised it would not happen again. Nonetheless, the father did molest L.W. the next

day and continued molesting her until she was seventeen years of age. He stopped because L.W. threatened to go to the police. L.W. moved out of the house when she turned eighteen years of age.

At 9:08 p.m. on the same day, L.W. gave a more detailed recorded statement to Investigators Jamieson Antonio and Chris Webster at the Hudson County Prosecutor's Office that was marked as an exhibit at trial and utilized in the examination and cross-examination of witnesses.

Our review of the initial police report and L.W.'s recorded statement satisfy us that, even if the initial police report was not produced, it was not material for *Brady* purposes. We are likewise satisfied that defendant has failed to establish that there was a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. *State v. Knight,* 145 *N.J.* 233, 246, 678 *A.*2d 642 (1996) (citing *United States v. Bagley,* 473 *U.S.* 667, 682, 105 *S.Ct.* 3375, 3383, 87 *L.Ed.*2d 481, 494 (1985)). The documents are substantially similar in their content, albeit L.W.'s recorded statement contains more detail. While elements are omitted from the Ramirez report that appear in the statement taken later on the same date, there are no material contradictions between the two, and thus the Ramirez report does not meaningfully undercut the content of L.W.'s more detailed statement incriminating defendant. Moreover, because of its detail, the recorded statement is, if anything, of greater value in impeaching the credibility of witnesses than is the Ramirez report. The Ramirez report represents merely cumulative evidence of little or no additional defensive value. Accordingly, we decline to order a new trial on the charges relating to L.W. as the result of its alleged nondisclosure.

Defendant's conviction for second-degree sexual assault of T.E. in violation of *N.J.S.A.* 2C:14–2b is reversed as barred by the applicable statute of limitations, and his sentence for that conviction is vacated. The denial of post-conviction relief respecting defendant's convictions for first-degree aggravated sexual assault

of L.W. in violation of *N.J.S.A.* 2C:14–1a(1) and (2) and resultant concurrent sentences is affirmed.