STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
ALONZO WILLIAMS, PLAINTIFF IN ERROR.

Argued March 20, 1916—Decided June 19, 1916.

A verdict by a trial jury that the "jury has agreed to convict the
defendant guilty of murder in the first degree with recommenda-
tion of mercy by the court, if the court will accept," shows that
the agreement of the jury turned upon a contingency which con-
tinued to exist when judgment was pronounced, and the state of
mind thus evinced is inconsistent with the existence of a verdict;
so long as such state of mind continued no conviction of defend-
ant had been reached.

On error to the Somerset Oyer and Terminer.

The plaintiff in error, Alonzo Williams, was indicted for
the murder of Benjamin Wooley. Both men were convicts
detained in the state camp in Somerset county. On the after-
noon of May 2d, 1915, during a game of baseball Wooley ac-
cused Williams of tripping him while running the bases and
some angry words were exchanged between the two men who
had previously been friends. When the game was over Wooley
went into the dormitory, which was near the ball ground,
and sat down on his bed. Williams also entered the dormi-
tory still carrying in his hand the bat he had used during the
game. There was evidence that the bats were customarily
brought in after the game. Williams first went to his own
bed and then walked over to Wooley's bed still having in his
hand the baseball bat, with which, after a few angry words,
he struck Wooley two or more blows, causing a fatal fracture
of the skull. Upon the trial of the indictment the court, while
explaining to the jury the nature of their duties, said, "They
(the jury) have nothing to do with the imposition of the sen-
tence. They can, indeed, in certain cases recommend the pris-
oner to the mercy of the court; but first and foremost and
practically exclusively the duty of the jury is to ascertain
from the evidence whether the crime has been committed and

whether the prisoner is guilty of it." The court then defined murder in the first and second degrees and manslaughter, without again referring to the recommendation of mercy by the jury. The statute authorizing juries to recommend life imprisonment in lieu of the death penalty for murder in the first degree (*Pamph. L.* 1916, *p.* 576) had not been enacted at the time this trial took place, viz., November 8th, 1915.

After the delivery of the charge the jury retired and some hours later returned to the court room for further instructions. Neither the prosecutor of the pleas nor counsel for the prisoner were on hand and there being no stenographer present the justice of the Supreme Court presiding in the Oyer and Terminer made the following memorandum of what took place, which is returned with the writ of error pursuant to the one hundred and thirty-sixth section of the Criminal Procedure act:

"Memoranda of occurrences in the trial of the State *v.* Alonzo Williams, after the jury had been charged and had retired to consider their verdict.

"The jury, after having been out for several hours, returned into court and said that they wished for further instructions; and, upon being interrogated by the court, asked a question which was read by one of the jurors from a paper; the paper, however, has not been preserved.

"The question was substantially this: How long a time must intervene between the formation of an intent to kill and the execution of that intent, in order to give the killing the quality of premeditation and deliberation?

"To which the court replied substantially by reading to the jury certain extracts from the case of *State* v. *Mangano,* 77 *N. J. L.* 544.

"The court read the quotation at the head of page 545 as an example of a charge which erroneously laid down the rule, and then proceeded to discuss the rule as laid down in recent cases, reading to the jury the quotation from the opinion of Mr. Justice Garrison, on the lower part of page 546, following that with the language of the Mangano opinion, at the

foot of page 546 and on page 547 as far as the word 'not until after such premeditation and deliberation have taken place does the act become willful in the sense intended by the statute.'

"The court added a few words on the same line as the above quotation, but the language cannot now be reproduced.

"The jury then retired.

"At eight forty-five P. M. the jury reported that they had agreed upon their verdict, and were recalled into court. The prisoner was present, but not the prosecutor nor the prisoner's counsel, although an effort was made to secure their attendance.

"The jury, upon being asked by the clerk if they had agreed upon their verdict, reported that they had; and upon being asked who should speak for them, said Mr. William G. Kershaw.

"In response to the usual question from the clerk Mr. Kershaw read from a written paper, the following:

" 'The jury has agreed to convict the defendant guilty of murder in the first degree with recommendation of mercy by the court, if the court will accept.'

"The court thereupon informed the jury, in substance, that the statute fixed the penalty for murder in the first degree, and it was beyond the power of the court to comply with any recommendation to mercy.

"The jury was not polled.

"A member of the jury said that they had determined to render their verdict in that form; and it was said by one or more of the jurors that the jury were unable to agree upon a verdict in any other form.

"The court stated that it saw no objection to receiving the verdict with the above recommendation; and the verdict was taken accordingly and the jury were discharged."

The judgment record contains a verdict in these words, "Jury has agreed to convict the defendant guilty of murder in the first degree with recommendation of mercy by the court, if the court will accept," and thereupon a judgment of death was at a later date pronounced by the court.

For the plaintiff in error, *William V. Steele.*

For the defendant in error, *Azariah M. Beekman.*

The opinion of the court was delivered by

GARRISON, J. In a criminal case the record or judgment roll, as it is indifferently called, must show the issue (indictment and plea), the presence of a court and jury, the verdict rendered by the jury and the judgment pronounced thereon by the court. *Clifford* v. *Hudson Oyer and Terminer,* 61 *N. J. L.* 493.

Between the last two of these essentials, *i. e.,* the verdict and the judgment, the legal relation is such that the question whether or not the verdict justifies the judgment will be reviewed by an appellate court upon error assigned on such record.

In the present case, in which such error is assigned, it is, to say the least, very questionable whether the record shows any verdict at all in the legal sense of that term. For the verdict is the definitive answer given by the jury to the court concerning the matters of fact committed to the jury for their deliberation and determination, a process in which not only must deliberation precede determination, but in which so long as the one continues the other has not been reached. Hence so long as the jury is in common parlance "agreeing upon its verdict" it has not convicted the defendant and the process of agreeing upon a verdict continues as long as there is any uncertainty or contingency as to the finality of such determination. This eminently practical distinction is illustrated in the verdict shown by the present record in which the conviction of the defendant so far from being definitely and unconditionally determined by the jury is expressly made to depend upon a contingent event of equivocal import upon which, however, the very agreement of the jury to convict the defendant is made to hinge. The state of mind thus evinced is inconsistent with the existence of a verdict; hence as long as such state of mind continues no conviction of the defendant has been reached and it is imperatively presumed on this

record that such state of mind continued until the contrary is shown. Such state of mind therefore continued when judgment was pronounced since the contrary is not shown and *quod non apparet non est*.

The state of mind thus shown obviously appertains to the period when the jury is agreeing upon its verdict and not to that period when a definitive verdict has been unconditionally determined upon.

In this essential particular the present case is the exact opposite of *State* v. *Overton,* 85 *N. J. L.* 287, where the verdict was guilty of murder in the first degree with a recommendation to the leniency of the court. Such a verdict showed that deliberation was at an end and that a determination had been reached, the legal effect of which was passed up to the court. Here, on the contrary, the very agreement of the jury turned upon a contingency, which situation, so far as the record discloses, continued to exist when judgment was pronounced.

It is evident therefore that it is not the plaintiff in error but the state who must invoke the proceedings at the trial to eke out a record that is inadequate to support the judgment. But can either party do this in an appellate proceeding in which, in the language of this court: "The record of the court below is always conclusive evidence of all matters that are properly included in it and will prevail over incompatible statements appearing *aliunde?* If the record is wrong the remedy is to have it amended." *Morton* v. *Beach,* 56 *N. J. Eq.* 791.

No motion to amend the record has been made and it is not perceived how such a proceeding could benefit the state, since a reading of the memorandum of the happenings at the trial in connection with the record returned to this court shows conclusively that whatever the court below may have said to the jury or the jury have said to the court the verdict that had been reduced to writing by the jury and handed to the court was the one the court decided to accept and that it was accordingly taken as the verdict of the jury and as such spread upon the record.

The amendment of the record by the judicial memorandum returned with the writ of error would not therefore, in the slightest degree vary the situation or overcome the inadequacy of the verdict to support the judgment that was pronounced thereon.

The judgment must therefore be reversed and the record remitted to the Somerset Oyer for a retrial of the indictment.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TERHUNE, HEPPENHEIMER, WILLIAMS, JJ. 6.

*For reversal*—GARRISON, TRENCHARD, BERGEN, MINTURN, KALISCH, BLACK, WHITE, TAYLOR, GARDNER, JJ. 9.