102 N.J. Super. 70 (1968)
245 A.2d 370
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILEY BELL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 17, 1968.
Decided July 2, 1968.
*71 Before Judges CONFORD, LABRECQUE and HALPERN.
Mrs. Marcia R. Richman, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Peter Murray, Public Defender, attorney).
Mr. Matthew J. Scola, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Prosecutor of Essex County, attorney).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Defendant Wiley Bell appeals from judgments of conviction entered upon two indictments, each charging assault and battery upon a police officer acting in the performance of his duty, N.J.S. 2A:90-4, and a single indictment charging attempted escape, N.J.S. 2A:104-6.
We are called upon to determine (1) whether the court committed prejudicial error in instructing the jury on the defense of insanity, and (2) whether it was error to refuse to give requested instructions as to the probable disposition of an accused on a returned verdict of not guilty by reason of insanity.
*72 A brief summary of the facts, not substantially in dispute, is as follows: At about 3:50 P.M. on July 26, 1966 Detectives Rebar and Brill of the Newark Police Department were dispatched to an apartment house at 311 Morris Avenue, Newark, to check on a complaint. There they found defendant in a second-floor apartment with a woman and her children, the woman screaming that she wanted defendant out of her apartment. The detectives identified themselves and asked defendant to leave, whereupon he gathered his clothing and left without incident.
Approximately 20 minutes after the detectives had resumed their patrol duty they returned to the same area and observed three or four children yelling from a window of the same second-floor apartment. They left their patrol car and, as they were proceeding toward the apartment for the second time, met defendant coming down the stairs. They arrested him for creating a disturbance, handcuffed him and placed him in the back seat of the patrol car.
On the way to police headquarters Rebar, who was driving, saw the right rear door open and defendant attempt to leave the vehicle. At Rebar's warning, Grill, who was in the front passenger seat, reached over the seat and grabbed defendant as Rebar stopped the vehicle. When Grill then attempted to get into the back seat while Rebar was holding defendant, he was kicked in the face and chest. Defendant kicked, bit and scratched the detectives and continued to struggle during the rest of the trip to police headquarters.
On the following day a police surgeon's examination revealed Rebar had sustained abrasions on his left second finger, his left forearm and his left arm; contusions of his left hand, left elbow and left shoulder; and a scratch on his right cheek, while Grill had abrasions on his right leg, his left hand and his left forearm; a contusion of his right forehead and multiple contusions about his body, and human bite marks on his right arm and right elbow.
The defense was insanity. On the basis of an extended hypothetical question incorporating defendant's psychological *73 background, past medical history and a psychiatric examination administered by him about eight months after the charged offense, Dr. Kesselman, a specialist in neuropsychiatry, opined that defendant, on the date of the incident, was suffering from a "psuedosociopathic schizophrenic reaction," described as a defect of reason caused by disease of the mind, and that he was not able to understand the nature and quality of his behavior nor did he know that what he was doing was wrong.
Dr. David J. Flicker, a specialist in psychiatry and neurology, testified that on the basis of his psychiatric and brief neurologic examination of defendant on May 26, 1967, and a review of Dr. Kesselman's medical report prepared prior to that date, he could not at the time of his examination make a diagnosis of schizophrenia, although defendant's "record was obviously one of recidivistic, sociopathic personality." He opined that, at the time of the examination, defendant "knew the nature and quality of his acts, knew what he was doing. He knew the difference between right and wrong, that he knew what society considered to be right and wrong * * *." Although Dr. Flicker could not, on the basis of the factual data before him, pass on defendant's state of mind at the time of the offenses charged, when asked whether "a good recollection" by defendant of the alleged offenses seven months after they had occurred would aid in evaluating his state of mind at the time of the incident, he replied, "If he had a good recollection at that time in all probability he knew the nature and quality of his acts."
Defendant objected to the trial court's instructions to the jury on the defense of insanity and urges on appeal that the language used was misleading and prejudicial because of the negative nature of the presentation of the law on the issue. The language objected to is as follows:
"Many of the forms and degrees of mental disease which in the judgment of medical men would be regarded as insanity are rejected by the law in its administration of criminal justice. The law regards insanity as a disease of the mind. It may be temporary or permanent *74 in its nature. But the condition must be a mental disease. It therefore rejects an emotional swell or turbulence arising from ungovernable passion which is not the result of a disease of the mind and which begins on the eve of the criminal act and ends when it is consummated.
It also rejects a moral depravity which is not the result of disease of the mind and which is based on a perverted or defective moral sense as well as the doctrine of irresistible [sic] impulse where the defendant is said to be afflicted with a state of mind which impels him to the commission of a deed while it leaves him with sufficient capacity to know the nature and quality of the act which he does and that it is wrong but notwithstanding he is unable to reframe [refrain] from doing it."
Following this the court went on to properly charge the law of insanity in the light of the M'Naghten rule  followed in this State and not under attack by defendant here. See State v. Lucas, 30 N.J. 37, 63-72 (1959); State v. Sikora, 44 N.J. 453, 470 (1965).
We find no error in the above-quoted portion of the charge. The language used is contained in a memorandum, dated April 18, 1961, from the Chief Justice to the Judges of the Superior Court and County Courts, suggesting certain revisions in the then commonly used jury instruction with respect to legal insanity. In addition, the charge, when viewed in its entirety, clearly expresses the governing principles bearing on the defense of insanity and the jury could not have been misled. See State v. Bertone, 39 N.J. 356, 368 (1963), certiorari denied 375 U.S. 853, 84 S.Ct. 113, 11 L.Ed.2d 80 (1963); State v. Coleman, 46 N.J. 16, 39 (1965), certiorari denied 383 U.S. 950, 86 S.Ct. 1210, 16 L.Ed.2d 212 (1966).
In its charge to the jury the court further stated:
"In the event you find the defendant not guilty by reason of insanity you will so state in your verdict. In that event, however, you will also be required to find whether or not such insanity continues to the present day."
See State v. Vigliano, 43 N.J. 44, 61-62 (1964). The court rejected the following request:
*75 "Now I charge you that in the event you find that Mr. Bell was legally insane at the time of the commission of the alleged crimes, he will not be released outright and permitted to walk the streets, but, to the contrary he will be confined in a hospital for the mentally ill or some other suitable institution until that hospital or that institution has certified and the court is satisfied that Mr. Bell has recovered from his illness and will not be dangerous to himself or to others in the reasonably foreseeable future."
We perceive no merit to defendant's contention that the refusal to so charge was error  particularly since the requested instruction was not limited to a situation where the jury found the insanity to be continuing, N.J.S. 2A:163-3, and was thus an incorrect statement of the law, State v. Segal, 78 N.J. Super. 273, 284 (App. Div. 1963), certification denied 40 N.J. 224 (1963). In addition, we decline to adopt the minority view, as exemplified by Lyles v. United States, 103 U.S. App. D.C. 22, 254 F.2d 725 (D.C. Cir. 1957), certiorari denied 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958), 362 U.S. 943, 80 S.Ct. 809, 4 L.Ed.2d 771 (1960), 368 U.S. 992, 82 S.Ct. 610, 7 L.Ed.2d 529 (1962), that a jury must be informed of the consequences of a verdict of not guilty by reason of insanity unless the defendant specifically requests otherwise. See also Taylor v. United States, 95 U.S. App. D.C. 373, 222 F.2d 398 (1955); McDonald v. United States, 114 U.S. App. D.C. 120, 312 F.2d 847, 851 (1962). Compare Pope v. United States, 298 F.2d 507 (5 Cir. 1962), certiorari denied 381 U.S. 941, 85 S.Ct. 1776, 14 L.Ed.2d 704 (1965). Generally speaking, the jury's duty, as distinguished from that of the court, is to decide the issue of defendant's guilt or innocence. The defense of insanity does no more than present a question for the jury's consideration in determining that issue. State v. Ordog, 45 N.J. 347, 371 (1965), certiorari denied 384 U.S. 1022, 86 S.Ct. 1942, 16 L.Ed.2d 1025 (1966). After the jury has made its determination it becomes the duty of the court, with minor exceptions not relevant here, to impose sentence or make such other disposition as is required by law. In making its determination, the jury should not be *76 influenced by a consideration of what will be the result of its verdict, nor should its attention be distracted from its chief function. Pope v. United States, supra; State v. Hood, 123 Vt. 273, 187 A.2d 499, 11 A.L.R.3d 732 (Sup. Jud. Ct. 1963); State v. Park, 159 Me. 328, 193 A.2d 1, 5 (Sup. Ct. 1963). See also Annotation, "Criminal Case  Instructions  Insanity," 11 A.L.R.3d 737 (1967). Cf. State v. White, 27 N.J. 158, 170-178 (1958).
We find no merit to defendant's remaining contention that his arrest was illegal and that he therefore had a right to resist the unlawful arrest. State v. Koonce, 89 N.J. Super. 169 (App. Div. 1965).
Affirmed.