STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
JOHN JENKINS, DEFENDANT-APPELLANT.

Argued November 29, 1977—Decided February 9, 1978.

*Ms. Kathryn A. Brock,* Assistant Deputy Public Defender,
argued the cause for appellant (*Mr. Stanley C. Van Ness,*
Public Defender, attorney).

*Mr. Anthony J. Parrillo,* Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

PER CURIAM. The judgment is affirmed substantially for the reasons expressed in the opinion of the Appellate Division.

CLIFFORD and SCHREIBER, JJ., dissenting. The Court granted certification, 73 *N. J.* 39 (1976), limited to the narrow issue of whether *N. J. S. A.* 2A:151–5 should be interpreted to include the crime of manslaughter. That statute provides for an enhanced sentence to be imposed on one convicted of certain enumerated crimes committed while armed. Absent—and conspicuously so—from that extensive list of those crimes is manslaughter. In holding that this defendant, who was convicted of manslaughter while armed, may be sentenced to an additional term for the armed feature, the Court not only effectively discards the established interpretive principle that penal statutes should be strictly construed, *State v. Meinken,* 10 *N. J.* 348, 352 (1952); *Neeld v. Giroux,* 24 *N. J.* 224, 229 (1957); *State v. Edwards,* 28 *N. J.* 292, 298 (1958); *State v. Carbone,* 38 *N. J.* 19, 24 (1962); see generally 3 *Sutherland, Statutory Construction,* § 59.03 at 6–8 (Sands 4th ed. 1974), but also misperceives the legislative intent, pays scant heed to the significant statutory history, and, along the way, contributes a generous dollop of revisionism to the chronicles of the common law.

The factual setting of the case is uncomplicated. The homicide occurred about midnight on March 23, 1974, when Eunice Lucas and John Jenkins, who had been living together, quarreled and began "tussling" over a gun which somehow discharged, fatally wounding Eunice. The trial court, having dismissed a charge of first degree murder at the conclusion of the State's case, charged the jury on second degree murder and voluntary and involuntary manslaughter. The jury acquitted the defendant of murder in the second degree and

returned a verdict of guilty of manslaughter while armed. Defendant was sentenced to 6 to 9 years for manslaughter and to 2 to 3 years for being armed, the sentences to run concurrently. The Appellate Division affirmed.

At the outset we focus on the wording of the statute. *N. J. S. A.* 2A:151–5 reads as follows:

Any person who commits or attempts to commit an assault, robbery, larceny, burglary, breaking and entering, rape murder, mayhem, arson, abduction, extortion, kidnapping, sodomy or treason, or who is a fugitive from justice, when armed with or having in his possession any firearm * * * shall, in addition to the punishment provided for the crime, be punished on a first conviction by imprisonment for not less than one nor more than 10 years * *n *n.

The enactment may be examined in vain for any reference whatsoever to manslaughter. Notwithstanding this omission, the Appellate Division, relying on *State v. Quinones,* 140 *N. J. Super.* 237 (App. Div. 1976), reasoned that the Legislature intended that the word "murder" in this context should be used in its common law sense and concluded that at common law murder encompassed manslaughter. The majority approved that reasoning, having in this case and *Quinones,* also decided this day, affirmed substantially for the reasons stated in the opinions below. *State v. Quinones,* 75 *N. J.* 391 (1978).

Initially we note that the rather rudimentary principle of statutory construction to which we have heretofore alluded, namely, that penal statutes should be strictly construed, leads directly to a result opposite from that reached by the Court. The plain, unambiguous statutory language refers to murder, not manslaughter. In the absence of some contrary legislative history or other valid reason, we should give due deference to the Legislature's choice of words. *Hoffman v. Hock,* 8 *N. J.* 397, 409 (1952); 2A *Sutherland, Statutory Construction,* § 46.01 at 48 (Sands 4th ed. 1974).

Were we inclined to look beyond the words of the statute, which we are hesitant to do in construing such a straight-

forward, clearly worded criminal enactment, we neverthe-
less would still be led to reverse. When initially enacted in
1927 the statute did not include murder. Additional penalties
for being armed were imposed only for the attempt to com-
mit or the commission of an assault, robbery, larceny, bur-
glary or breaking and entering. *L.* 1927, *c.* 321, § 2. Two
subsequent amendments expanded the list of weapons to be
included in the meaning of "armed." *L.* 1959, *c.* 148, § 1; *L.*
1963, *c.* 160, § 1. In 1966 the list of crimes was enlarged to
add "* * * rape, murder, mayhem, arson, abduction, extor-
tion, kidnapping, sodomy or treason * * *." *L.* 1966, *c.* 60,
§ 4. At that time it was well-settled that manslaughter was
a crime separate and distinct from murder. In *State v.
Brown,* 22 *N. J.* 405 (1956), decided some ten years prior
to the 1966 amendment, the Court declared:

[M]anslaughter is an offense distinct from and not a degree of mur-
der. See *State v. White,* 41 *Iowa* 316 (Sup. Ct. 1875). Murder in
the second degree is distinguished from manslaughter by the ele-
ment of malice, essential to the former but not the latter.
[22 *N. J.* at 411.]

Therefore, when the Legislature acted, it presumably knew
that manslaughter was an offense separate and apart from
murder. *Cf. Barringer v. Miele,* 6 *N. J.* 139, 144 (1951).

Reasoning that the Legislature intended that the word
"murder" should be used in its common law sense, the Ap-
pellate Division proceeded to accord it a meaning it thought
was in vogue (mistakenly, as will be seen) more than 400
years earlier. But nothing in the statutory history gives the
slightest hint that the lawmakers were resorting to some
archaic meaning of the word rather than the one currently
and commonly given it. A court's consideration of a statute
should be in the context of the time when it was enacted.
See *Matawan Borough v. Monmouth Cty. Tax Bd.,* 51 *N. J.*
291, 299 (1968); *N. J. State P.B.A. v. Morristown,* 65
*N. J.* 160, 165 (1974).

. Even if the Legislature intended that the word "murder" be used in its common law sense, the Appellate Division erred also in assuming that the common law crime of murder included manslaughter. It is true that the early common law of England did not distinguish manslaughter from murder, all homicides being punishable by death. 2 *Pollack & Maitland, History of English Law* 485 (2d ed. 1899). But homicides became subject to the benefit of clergy whereby offenders might be spared capital punishment. *Adams, Constitutional History of England* 97 (Schuyler rev. 1943). To curb this ecclesiastical power the benefit of clergy was made available for "any wilful murder of malice prepensed," 23 Henry 8, c. 1, § 3 (1531), or as it came to be known "malice aforethought," an element present in murder, but not in manslaughter. Blackstone, in his commentaries, described criminal homicide as being divided into two separate offenses, manslaughter and murder. 4 *Blackstone, Commentaries*\*190. He defined manslaughter as the unlawful killing of another without malice, express or implied, either voluntarily upon a sudden passion or involuntarily in the commission of some unlawful act. *Id.*\*191. Murder, on the other hand, was defined as the unlawful killing with malice aforethought, "the grand criterion which now distinguishes murder from other killing \* \* \*." *Id.*\*198. Accordingly, at least as early as the sixteenth century, murder and manslaughter were treated as separate crimes. These developments occurred long before the Revolution and hence formed part of the received common law of this State. *State v. Mairs,* 1 *N. J. L.* 335 (Sup. Ct. 1795) ; *Loudon v. Loudon,* 114 *N. J. Eq.* 242, 251–252 (E. & A. 1933) ; *In re Vince,* 2 *N. J.* 443, 452 (1949). In *State v. Brown, supra,* this Court acknowledged this distinction which had developed at common law between murder and manslaughter:

At common law as a general rule all homicide is malicious, and amounts to murder, unless where *justified* by the command or permission of the law; *excused* on the account of accident or self-preservation, or *alleviated* into manslaughter, by being either the

involuntary consequence of some act, not strictly lawful, or (voluntary) occasioned by some sudden and sufficiently violent provocation. Manslaughter is the unlawful killing of another without malice, either express or implied, which may be either voluntarily, upon a sudden heat, or involuntarily, but in the commission of some unlawful act. And at common law all homicide is presumed to be malicious until the contrary "appeareth upon evidence." 4 *Blackstone's Com.*, sections 224, 229, 233.

[22 *N. J.* at 410–411.]

Thus, as we have sought to demonstrate, the assumption of the court below—and now of the majority here—with respect to the early common law is historically unsound.

As additional support for its analysis, the court below urged that the legislative purpose of the statute was to deter the use of weapons during the commission of crimes of violence, so that manslaughter must have been included. It reasoned that inclusion of an assault and not manslaughter would be inconceivable. These contentions miss the mark. The Legislature may well have intended to exclude manslaughter, since at least involuntary manslaughter, unlike assault, does not require specific intent. The logic of including some offenses and not others may not be readily apparent. For instance, in the 1927 act the Legislature imposed an added punishment for an assault committed while armed, and yet not for rape or murder. That difference may not seem logical or wise, but our proper function requires that we recognize and give effect to that difference. Had the Legislature intended to include manslaughter, it would have been a simple matter to have inserted that crime specifically or to have used a generic term such as "homicide." It is not our function to rewrite the statute to satisfy our notions of what would be wise or appropriate.

Consequently, in view of the substantive differences between murder and manslaughter, we would respect the Legislature's decision to include the one crime and not the other within the purview of the statute.[1] We vote to modify the

_____

[1]In the proposed penal code passed by the Assembly, A–642, November 22, 1976, additional punishment as a consequence of being

'judgment by vacating the additional sentence of two to three years for being armed in the commission of manslaughter.

*For affirmance*—Chief Justice HUGHES and Justices SULLIVAN, PASHMAN and HANDLER—4.

*For modification*—Justices CLIFFORD and SCHREIBER—2.

armed applied only to assault (Section 2C:12–1(b)(3)), burglary (Section 2C:18–2(b)(2)), and robbery (Section 2C:19–1(b)). Interestingly, the Model Jury Charge defines murder as consisting of *only* first and second degree murder. N. J. Model Jury Charges — Crim., Charge 2.223 (Nov. 19, 1976).