618 A.2d 316

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JOHN SHORT, DEFENDANT–APPELLANT.

Argued March 17, 1992—Decided January 20, 1993.

*Matthew Astore,* Deputy Public Defender II, argued the cause for appellant (*Wilfredo Caraballo,* Public Defender, attorney; *Matthew Astore* and *Thomas C. Miller,* Designated Counsel, of counsel and on the briefs).

*Gary H. Schlyen,* Chief Assistant Prosecutor, argued the cause for respondent (*Ronald S. Fava,* Passaic County Prosecutor, attorney).

The opinion of the Court was delivered by

HANDLER, J.

In this case we must decide how a trial court should instruct a jury when the evidence would support a conviction on a lesser included offense to the offense charged but the statute of limitations has run on that lesser included offense.

## I

Defendant John Short and his wife Candice Short resided together in an apartment in Belleville, New Jersey. Their marriage was not always smooth. In the fall of 1980, after about two years of marriage, the couple separated for about a week. For that week Candice stayed with her parents, Frederick and Helen Austin, who also resided in Belleville.

On June 22, 1981, Candice Short spent the afternoon with her sister, Jeanne Austin Suarez. Ms. Short mentioned to her sister that she had recently purchased a costume, including silver tights, for a June 26 dance recital. At approximately 4:30, Ms. Suarez dropped off Ms. Short at the Short's apartment. About two hours later, Ms. Short took her daughter to be babysat at the home of Betty Martin, her parents' neighbor. According to Martin, Ms. Short said that she was going to meet her husband, defendant, at the Willowbrook Mall.

Later that evening, at approximately 11:20, Mr. Short appeared at Betty Martin's home, inquiring about his wife and asking "Isn't she here yet?" He told Martin that he had not met his wife at the mall because he had gone to a business meeting instead. He then took his daughter to his in-laws' house where he again asked if anyone knew his wife's whereabouts. When his in-laws didn't know where she was, defendant said "She isn't home, something must have happened.

She went to Willowbrook and she hasn't come home." At trial Ms. Short's father, Fred Austin, testified that defendant said he would look for his wife and that he asked Mr. Austin to accompany him.

Defendant and Mr. Austin went to the Willowbrook Mall where they discovered Candice Short's body lying in her parked car. Mr. Austin testified that, although the parking area was "pitch black," Short was able to spot his wife's car very quickly and was able to take them directly to it. When they found the body they summoned the police and an ambulance.

According to an officer who arrived at the scene, Candice Short was found lying in the car, her body badly bruised and her breasts exposed. A key ring with a white T-shirt fob was found in the car. The victim's handbag and wallet were on the front seat and appeared to have been "gone through."

An autopsy subsequently revealed that she had suffered an application of blunt force to the head and shoulders; a crushing of the neck; and a puncture wound that may have been caused by a screwdriver. The actual cause of death was determined to have been asphyxiation. There was no evidence of sexual assault.

On June 23, the day after the body was discovered, defendant was questioned by the Wayne police. Defendant consented to a search of the apartment, where the police found a silver leotard. This discovery was important because defendant had said that he thought his wife had gone shopping in order to buy a leotard.

A police investigation failed to corroborate defendant's alibi. Defendant told the police that at the time of the killing he had been driving around West Orange, lost, on his way to a meeting. That statement was contradicted with testimony of witnesses who stated that defendant worked in the area and knew it, and that the LaMaze classes that he and his wife had attended were located only a few doors away from the building where the meeting was to have been held. Police investigation

also uncovered a paramour relationship that had developed prior to the killing between Short and a go-go dancer named Diane Lovejoy. According to Lovejoy, she had told defendant only days before the murder that she was a widow, and defendant had responded to her that he was a widower, his wife having been the victim of a violent mugging.

At trial, Barbara Capalbo, a prosecution witness, revealed that she had been shopping at the Willowbrook Mall on the evening of June 22, 1981. She stated that she saw a man and a woman arguing violently inside a car whose description roughly matched the car belonging to the victim. Capalbo said the man had been wearing a white T-shirt. At trial the prosecution established that Short regularly wore white T-shirts.

On February 3, 1988, more than six years after the killing, defendant was indicted for murder. No reason for the delay in prosecution has been given. A jury trial was held from January 23, 1989, through February 10, 1989.

After all of the evidence had been presented, the defense requested an instruction on lesser included offenses of manslaughter. After finding that a rational basis existed for such a charge, the trial court instructed the jury on passion-provocation manslaughter, aggravated manslaughter, reckless manslaughter, and murder. Over defense counsel's objection, the court further instructed the jury that if it found Short guilty of manslaughter he would be acquitted because the statute of limitations had run on that offense. The jury convicted defendant of murder. He was sentenced to thirty years in prison with a parole ineligibility period of fifteen years.

Defendant appealed, arguing that he was entitled to instructions on the lesser included offenses unaccompanied by warnings that he would go unpunished if convicted of one of them. He contended that by telling the jury that he would go free if convicted of manslaughter, the trial court all but guaranteed that the jury would not convict him of that offense, and thereby nullified any advantage he might have received from the re-

quested instructions. The Appellate Division affirmed defendant's conviction. According to the Appellate Division, "Since Short did not waive or offer to waive the statute of limitations, he was not entitled to the benefit of the manslaughter charge." Characterizing defendant's position as the assertion of a right "to have a judge deceive a jury," the Appellate Division determined that "the trial court's instruction to the jury respecting the impact of the statute of limitations constituted harmless error, if error at all."

We granted defendant's petition for certification. 127 *N.J.* 554, 606 *A.*2d 367 (1991).

## II

At trial, defendant sought to avail himself of two independent rights. He wanted to take advantage of both his right to have the jury instructed on all lesser included offenses supported by the record and his right not to be convicted of a crime whose statute of limitations had passed. In effect, the courts below held that he could enjoy one right or the other but not both. We believe that defendant was entitled to the benefit of both rights, and that the securement of one should not have been conditioned on the relinquishment of the other.

When a defendant is charged with a serious crime, jurors may find the defendant not guilty of that crime but guilty of some other less serious crime. Jurors often will convict a defendant only of a lesser crime, notwithstanding the possibility that he or she may have committed the greater crime, because their belief that he or she committed the lesser crime may create a reasonable doubt concerning the commission of the greater crime. Frequently, the elements of the lesser crime bear on or implicate defenses to the greater crime. In effect, the defense to the more serious crime is that the defendant committed the less serious crime. *Cf. State v. Bowens*, 108 *N.J.* 622, 640, 532 *A.*2d 215 (1987) (explaining that even though a jury could not return a verdict of manslaughter based on

imperfect self defense, jury must nevertheless consider all of the evidence of uncertainty in the defendant's mind in deciding whether the State had proved each and every element of offense charged beyond a reasonable doubt). That is the kind of defense at issue in this appeal. Although defendant's primary defense to the murder charge was that he had not been present when his wife was killed, he also argued, in the alternative, that even if he had been present the evidence supported only a conviction for manslaughter.

■ To give full force to the reasonable doubt standard and to preserve defendants' rights to have the jury consider all defenses supported by the evidence, this Court has ruled that a defendant is entitled to a charge on all lesser included offenses supported by the evidence. In *State v. Purnell,* a recent capital-murder case, we found error in the trial court's refusal to instruct the jury that it could find defendant guilty of felony murder (an offense not punishable by death) rather than knowing or intentional murder (an offense that is punishable by death). 126 *N.J.* 518, 601 *A.*2d 175 (1992). There we noted that we have "consistently held that all forms of homicide rationally supported by the evidence, whether they be lesser included or alternative offenses, should be placed before the jury." *Id.* at 530, 601 *A.*2d 175. *See State v. Grunow,* 102 *N.J.* 133, 506 *A.*2d 708 (1986).

Because the right to have the jury consider lesser included offenses implicates "the very core of the guarantee of a fair trial," *Id.,* 126 *N.J.* at 531, 601 *A.*2d 175, we have applied that right not only in capital-murder cases but in non-capital murder cases and non-homicide cases as well. *See, e.g., State v. Muniz,* 118 *N.J.* 319, 571 *A.*2d 948 (1990) (finding that defendant convicted of death by auto had been entitled to jury charges on lesser offenses of careless driving and reckless driving); *State v. Sloane,* 111 *N.J.* 293, 544 *A.*2d 826 (1988) (finding that defendant convicted of second-degree aggravated assault had been entitled to jury charge on lesser offense of third-degree

aggravated assault); *State v. Grunow, supra,* 102 *N.J.* 133, 506 *A.*2d 708 (where defendant is charged with aggravated manslaughter, the court must charge the jury on provocation/passion manslaughter as an alternative offense if warranted by the evidence at trial). Unless a jury is told that it can convict the defendant of lesser included offenses, it may be tempted to find defendant guilty of a crime he or she did not commit simply because it prefers to convict on *some* crime rather than no crime at all. *See Beck v. Alabama,* 447 *U.S.* 625, 635, 100 *S.Ct.* 2382, 2388, 65 *L.Ed.*2d 392, 401 (1980); *Keeble v. United States,* 412 *U.S.* 205, 208, 93 *S.Ct.* 1993, 1997, 36 *L.Ed.*2d 844, 847 (1973); *Muniz,* 118 *N.J.* at 332, 571 *A.*2d 948; *Sloane,* 111 *N.J.* at 299, 544 *A.*2d 826. Only by instructing juries on lesser included offenses can trial courts avoid placing juries, and defendants, in such "all-or-nothing" predicaments. *Muniz,* 118 *N.J.* at 332, 571 *A.*2d 948.

Although counsel requested a charge on the various forms of manslaughter that were supported by the evidence, he also sought to preserve his right under the applicable statute of limitations not to be convicted for manslaughter in the event that the jury returned a verdict of guilty on a form of manslaughter. The trial court acquiesced. But it specifically instructed the jury that any verdict of guilt that it returned on the manslaughter charges would not result in the entering of a conviction against the defendant.

██ We have ruled in civil cases that statutes of limitations create vested rights of which litigants cannot be deprived. *See, e.g., State by Parsons v. Standard Oil Co.,* 5 *N.J.* 281, 74 *A.*2d 565 (1950), *aff'd sub nom Standard Oil Co. v. New Jersey,* 341 *U.S.* 428, 71 *S.Ct.* 822, 95 *L.Ed.*2d 1078 (1951); *State v. United States Steel Corp.,* 22 *N.J.* 341, 126 *A.*2d 168 (1956). Judge Learned Hand underscored the injustice that would result if courts blithely ignored statutes of limitations. "The question," he said, "turns upon how much violence is done to our instinctive feelings of justice and fair play. For the state to assure a

man that he has become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest." *Falter v. United States,* 23 *F.*2d 420, 425–26 (2d Cir. 1928).

Those principles have even greater force in criminal cases, for in criminal cases, unlike civil cases, a person's liberty is at stake. Just as the constitutional prohibition against *ex post facto* laws would bar the legislature from taking away a right under a statute of limitations, *See In re Coruzzi,* 95 *N.J.* 557, 577–79, 472 *A.*2d 546 (1984), so would the vested rights doctrine foreclose a court's unilateral deprivation of that right.

■ Moreover, in New Jersey, the statute of limitations in a criminal statute is tantamount to an absolute bar to the prosecution of the offense. *State v. Zarinsky,* 75 *N.J.* 101, 107, 380 *A.*2d 685 (1977); *In re Pillo,* 11 *N.J.* 8, 17–18, 93 *A.*2d 176 (1952); *State v. Stillwell,* 175 *N.J.Super.* 244, 249–50, 418 *A.*2d 267 (App.Div.1980); *Moore v. State,* 43 *N.J.L.* 203, 209 (E. & A.1881). The statute of limitations on criminal prosecutions is more than merely an affirmative defense to be asserted by a defendant, and the court cannot unilaterally nullify that protection. To be sure, the legislature need not have created any statute of limitations at all for the crime of manslaughter, but once it had, that statute became binding on the courts. *See Hicks v. Oklahoma,* 447 *U.S.* 343, 100 *S.Ct.* 2227, 65 *L.Ed.*2d 175 (1980) (holding that statute authorizing defendant to be sentenced by a jury created a constitutionally protected entitlement, and that the trial court stripped defendant of that entitlement without due process by instructing the jury that it was required to sentence defendant to a mandatory term). We do not perceive that the Legislature intended anything less protective when it imposed a five-year period of limitations against the prosecution of manslaughter offenses and that the statutory bar would apply when manslaughter is sought to be charged as a lesser included or alternative offense to a greater or more

serious crime. *See State v. Stillwell, supra,* 175 *N.J.Super.* at 251-53, 418 *A.*2d 267.

The Commentary of the New Jersey Criminal Law Revision Commission (1971) tempers the conclusion that the Legislature did not intend to allow conviction of a lesser included offense that is subject to the statute of limitations because the prosecution is brought for a greater offense that is not subject to the statute of limitations. The commentary includes the statement that "a defendant may, at his option, waive the bar so as to obtain the benefit of having the jury consider the lesser offense." *The New Jersey Penal Code, Vol. II: Report and Penal Code* (1971), p. 17. However, the Commission's commentary elsewhere contradicts that statement. The commentary states expressly that:

> The Code does not allow conviction of a lesser included offense which is barred by the Statute when the prosecution is brought for a greater inclusive offense. The result is that there can be no conviction for any offense, included or otherwise, unless prosecution is commenced during the period of limitation applicable to that offense. *Cf., State v. Brown,* 22 *N.J.* 405 [126 *A.*2d 161] (1956).

The two positions are paradoxical, if not contradictory. Frequently a lesser included offense is charged to the jury when the defendant was not indicted for that offense. If a defendant is entitled to such a charge and, as the commentary acknowledges, that lesser included offense is subject to the statute of limitations, that cannot be reconciled with a requirement that the statute of limitations must be waived in order for the defendant to obtain that charge. In the face of that ambiguity and uncertainty we are unable to conclude that the Legislature intended to weaken the strength of the bar of the statute of limitations in criminal causes generally or, more specifically, to do so with respect to unindicted lesser included offenses.

The commentary also acknowledges the case of *State v. Brown,* 22 *N.J.* 405, 126 *A.*2d 161 (1956). There the defendant was charged with first-degree murder, a capital crime that was not subject to a statute of limitations, and the Court allowed the conviction of second-degree murder as a lesser included offense without regard to the two-year statute of limitations applicable

to the prosecution of a non-capital offense. Apparently the Commission considered *Brown* to be an exception to the general rule that the statute of limitations will not be waived with respect to the lesser included offense. That holding could logically extend to manslaughter under current law, if the statute of limitations were interpreted to bar punishment only where the defendant has been indicted for the greater offense of murder. *State v. Brown,* however, is distinguishable. It is important to understand that in *Brown* the lesser included offense was a form of murder, not manslaughter. The decision hinges on the point that traditionally murder constituted a unified crime and that it consisted of different degrees of homicide accompanied by *mens rea.* Although manslaughter may be at common law a lesser offense than murder, at common law it has always been a separate crime from murder because of the absence of malice. *State v. Jenkins,* 75 *N.J.* 392, 395, 383 *A.*2d 95 (1978) (citing, in part, *State v. Brown* and concluding that in 1927, the Legislature presumably considered manslaughter to be an offense separate and apart from murder). That common law tradition appears to have strongly influenced the Legislature. As observed in *State v. Stillwell, supra,* with respect to the pre-Code statute of limitations, *N.J.S.A.* 2A:159–2 (repealed), "the extensive legislative history ... clearly evinces a legislative intent to treat manslaughter differently from murder with respect to the time limitation for prosecution and punishment." 175 *N.J.Super.* at 250, 418 *A.*2d 267.

As it happens, the Legislature *has* amended the New Jersey Code of Criminal Justice to remove all time bars for the offenses of aggravated manslaughter and manslaughter, *see* . *N.J.S.A.* 2C:1–6 (amended by *L.* 1988 *c.* 68). Of course, no one has suggested that the amendment be applied retroactively to defendant's case. See discussion, *supra,* at 54–56, 618 *A.*2d 320.

Thus, the trial court ruled correctly insofar as it preserved defendant's statute of limitations defense to the charge of manslaughter.

### III

■ Defendant's complaint is that in preserving the statute of limitations defense, the trial court unnecessarily compromised his right to have the jury instructed on lesser included offenses. He argues that the court effectively eliminated the value of the manslaughter instruction by telling the jury that defendant would go free if convicted only of manslaughter. Observing that lesser included offense instructions are supposed to give juries a range of options so that they will not be forced to decide between a conviction for a crime more serious than the one committed or no conviction at all, defendant claims that the instructions given in his case, examined as a whole, left the jury with precisely the same choice that it would have had, had it never known about the lesser included offenses. In other words, he says, the purpose of the lesser included offense charge was defeated by the charge on the effect of the statute of limitations. We agree.

By telling the jury that defendant would go free if convicted of manslaughter, the trial court all but invited the jury to disregard the manslaughter instruction. Jurors who believe that a defendant has killed his wife are hardly likely to return a verdict of manslaughter knowing that defendant will go free if they do. In effect, the trial court told the jury that it had a choice between returning a conviction for murder or letting defendant go unpunished. In doing so, the court undermined the effect of the reasonable doubt standard, denied defendant a full hearing on his defenses, and, ultimately abridged his right to a fair trial. The court should have instructed the jury on the lesser included offenses without telling it that the statute of limitations had run or that defendant would go free if the jury convicted him of those offenses and acquitted him of murder.

Our holding today is based on longstanding principles of New Jersey law that surround a defendant's right to a fair trial. We

acknowledge and reject federal precedent to the contrary and those cases that have chosen to follow that precedent. *E.g., State v. Johnson,* 235 *N.J.Super.* 547, 563 *A.*2d 851 (App.Div. 1989). In *Spaziano v. Florida,* 468 *U.S.* 447, 104 *S.Ct.* 3154, 82 *L.Ed.*2d 340 (1984), the United States Supreme Court addressed a case similar to this one. There the trial court had informed the defendant that it would instruct the jury on lesser included offenses on the condition that the accused waive the statute of limitations defense to those offenses. The defendant rejected the condition and the trial court refused to instruct the jury on the lesser included offenses. Defendant ultimately was convicted of capital murder and sentenced to death. The Supreme Court affirmed defendant's conviction and sentence, explaining that the rule requiring instruction on lesser included offenses "does not require that the jury be tricked into believing that it has a choice of crimes for which to find the defendant guilty, if in reality there is no choice." *Id.* at 456, 104 *S.Ct.* at 3160, 82 *L.Ed.*2d at 349. According to the Supreme Court, defendant's rights are protected sufficiently so long as defendant is given the option of (1) having the jury instructed on the lesser included offenses but having it told about the effect of the statute of limitations or (2) having the jury instructed on the lesser included offenses and losing the statute of limitations defense. We do not believe a defendant's options should be so limited.

We should point out an important distinction between *Spaziano* and this case. The role of the jury in Florida differs from the role of the jury in New Jersey. Thus, unlike the jury in *Spaziano,* which, pursuant to Florida law, was apprised of the various punishments attendant to each of the offenses before it, the jury in this case was not so apprised. With the notable exception of juries hearing capital cases, New Jersey juries do not consider the punishments attendant to offenses in deciding guilt or innocence. *See State v. Conforti,* 53 *N.J.* 239, 244-45, 250 *A.*2d 6 (1969) (noting that in making its determination, "the jury should not be influenced by a consideration of what will be the result of its verdict, nor should its attention be distracted

from its chief function") (quoting *State v. Bell*, 102 *N.J.Super.*
70, 75–76, 245 *A.*2d 370 (1968), *certif. denied* 52 *N.J.* 485, 246
*A.*2d 447 (1968) (citations omitted)). *Cf. State v. Williams*, 113
*N.J.* 393, 550 *A.*2d 1172 (1988) (*Williams* II) (holding that *voir
dire* of potential jurors in capital cases must establish that the
jurors sitting on the case would not sentence defendant to
death automatically if a verdict of guilty is returned). Thus,
the implications of asking a New Jersey jury to consider an
offense for which conviction is time-barred may differ some-
what from the implications of asking a Florida jury to consider
an offense for which conviction is time-barred.

Quite apart from that subtle distinction, however, we are
unpersuaded by the reasoning of *Spaziano*. *Spaziano* over-
looks the fundamental injustice entailed in forcing a defendant
to choose between two critical substantive rights. A defen-
dant's right to a fair trial cannot be conditioned on his or her
giving up a vested right to a statute of limitations defense, and
a defendant's vested right to a statute of limitations cannot be
conditioned on his or her giving up the right to a fair trial. *See
State v. Muentner*, 138 *Wis.*2d 374, 406 *N.W.*2d 415 (1987);
*Tucker v. Florida*, 459 *So.*2d 306, 312 (1984) (Boyd, C.J.,
concurring in part and dissenting in part).

Our holding today does not endorse the "tricking" or "deceiv-
ing" of juries, as charged by the dissent. *E.g., Post* at 63, 618
*A.*2d 324. Rather it requires the careful guiding of juries so
that they will be biased neither for nor against the defendant.
Although the jury serves as the " 'conscience of the communi-
ty,' " *State v. Simon*, 79 *N.J.* 191, 208, 398 *A.*2d 861 (1979)
(quoting *United States v. Spock*, 416 *F.*2d 165, 182 (1st Cir.
1969), and although its verdict is supposed to reflect our com-
mon morality, jurors may not be allowed to consider factors
that may improperly shew their determinations of criminal guilt
or innocence. "A jury verdict of criminal guilt is supposed to
express an ultimate judgment of culpability that encompasses
the consideration of the evidence, the determination of basic
facts, and the application of legal principles that define the

substantive crime and guide the jury to its special responsibility for determining criminal guilt." *Purnell,* 126 *N.J.* at 553, 601 *A.*2d 175 (Handler, J., concurring in part and dissenting in part).

■ The trial court must endeavor to prevent the jury from considering evidence or information that would unduly prejudice either the State or the defense with respect to the central responsibility of the jury: determining criminal culpability. When instructing the jury, the judicial obligation is to ensure "impartial deliberations upon the guilt of a criminal defendant based solely upon the evidence in accordance with proper and adequate instructions." *Simon, supra,* 79 *N.J.* at 206, 398 *A.*2d 861. *See also State v. Ragland,* 105 *N.J.* 189, 195, 519 *A.*2d 1361 (1986) (holding that where the same jury considers evidence previously litigated before it, it is essential that the jury be strictly instructed to disregard its prior verdict and to consider that evidence anew); *State v. Ingenito,* 87 *N.J.* 204, 432 *A.*2d 912 (1981) (holding that use in second trial of defendant's first conviction constitutes collateral estoppel and impinges on the factfinding functions of the jury).

■ The core of the jury's duty is to determine criminal culpability, not punishment. Except in capital cases, we do not allow trial courts to inform jurors of the availability or severity of the punishments consequent to the various offenses before them. *See Conforti, supra,* 53 *N.J.* at 244–45, 250 *A.*2d 6.

To that end, trial courts often keep information from juries, especially when doing so is necessary to preserve defendants' rights. *See, e.g., State v. Erazo,* 126 *N.J.* 112, 136, 594 *A.*2d 232 (1991) (holding that a medical report used to prove the prior-murder aggravating factor in penalty phase of capital trial must be edited to exclude graphic details about the alleged prior murder); *State v. Ragland, supra,* 105 *N.J.* 189, 519 *A.*2d 1361 (holding that a jury should *not* be instructed that it has the power of lenity); *State v. Bankston,* 63 *N.J.* 263, 307 *A.*2d 65 (1973) (holding that when a police officer makes an arrest after receiving a confidential tip, that officer may not repeat the tip and may say only that he or she proceeded as a result of "information received"); *State v. Dye,* 60 *N.J.* 518, 537, 291

A.2d 825 (1972) (stating that when the police raid a crime scene and seize some evidence legally and other evidence illegally, only the legally seized evidence is admissible); *State v. Taylor*, 46 *N.J.* 316, 217 *A.*2d 1 (1966) (holding that when a defendant confesses and implicates a codefendant, and the two are tried together, the confession must be redacted so that all mention of the non-confessing codefendant is omitted); *State v. Burnett*, 232 *N.J.Super.* 211, 556 *A.*2d 1251 (App.Div.1989) (holding same); *State v. De Marco*, 157 *N.J.Super.* 341, 384 *A.*2d 1113 (App.Div.1978) (holding same). Plainly, the suppression of information obviously could affect the outcome of the case, but that does not mean that the information should be given to the jury. Just the opposite is true. The trial court's task is to let the jurors know what they need to know in order to make a fair decision on criminal liability in accordance with applicable law, not to give them whatever information they might want in order to assure the imposition of criminal punishment. *See State v. Czachor*, 82 *N.J.* 392, 413 *A.*2d 593 (1980) (rejecting *Allen* charge that explains to a hung jury consequences of a retrial because that instruction could induce jury to reach improvident verdict concerning criminal culpability). In our view, the successful completion of that task by a trial court constitutes neither "trickery" nor "deception" but a job well done.

We agree with the Wisconsin Supreme Court's resolution of these issues. "Whether a defendant is entitled to a lesser included offense instruction and whether the statute of limitations has run on a crime are two separate questions." *Muentner, supra,* 406 *N.W.*2d at 420. In New Jersey, as in Wisconsin, the "jury operates independently of sentencing and punishment concerns." *Id.* at 423. And in New Jersey, as in Wisconsin, "the running of the statute of limitations does not preclude the jury from reaching a verdict convicting the defendant of a crime; it rather precludes the trial court from entering a judgment of conviction on the finding of guilt." *Id.* at 421.

We conclude that defendant was entitled to instructions on lesser included offenses, that the jury should not have been told

of the sentencing implications for the verdicts available to it, and that defendant was entitled to the benefit of the running of the statute of limitations for the lesser included offenses.

## IV

The judgment of the Appellate Division is reversed and the matter is remanded to the Law Division for proceedings in conformity with this opinion.

O'HERN, J., concurring in part, dissenting in part.

Defendant has been charged with the 1981 murder of his wife. He pleads alibi as a defense. In fact, he may have committed the homicide but have done so in the heat of passion or under other circumstances that would warrant a manslaughter charge. The State's 1988 indictment could not charge defendant with manslaughter, because the five-year statute of limitations had run. The State could not provide a valid explanation for the delay, although one of the original investigating officers had died. There is, however, no statute of limitations for murder. At trial, defendant requested a charge on the various forms of manslaughter that were supported by the evidence, but also sought to preserve his rights under the applicable statute of limitations not to be convicted of manslaughter.

The circumstances create a troubling dilemma. On the one hand, a defendant is entitled to have the jury consider all the available verdicts that bear on his or her guilt or innocence, *State v. Sloane*, 111 *N.J.* 293, 544 *A.*2d 826 (1988); on the other hand, a jury should never be misled with respect to its function, *State v. Bey II*, 112 *N.J.* 123, 162–64, 548 *A.*2d 887 (1988); and a prosecution should never be a sham.

The majority deals with one risk, that the jury confronted with an all-or-nothing verdict might lean over backward to convict. It ignores the other risk, that the jury confronted with a lesser-included offense might for compromise or for compassion convict the defendant of the lesser crime only to find that it has been put through a mock trial. We often speak of the profound importance of "public confidence in the administration

of criminal justice." *E.g., In re Commitment of Edward S.,* 118 *N.J.* 118, 139, 570 *A.*2d 917 (1990). To send a jury into deliberations on murder and its lesser-included offenses without informing the jury that the court will not accept a guilty verdict if other than for murder will undermine public confidence in the administration of justice. Pulling the wool over jurors' eyes surely cannot be a legitimate function of the justice system. The Appellate Division correctly characterized defendant's position as the assertion of a right "to have a judge deceive a jury," and that is what the Court sustains today.

Nor can I agree that the dilemma is insoluble. In many circumstances, we candidly explain to juries that even though they will not be empowered to return a verdict on certain offenses, they must consider those offenses as part of their evaluations of guilt of the offenses charged. Examples abound. In *State v. Brown,* 118 *N.J.* 595, 620–21, 573 *A.*2d 886 (1990), we explained that even though the defendants could not be charged with motor vehicle offenses of reckless driving in a "cat-and-mouse" incident on a highway, the jury would have to consider those offenses in evaluating whether the State had proved the defendants' guilt of the crimes of death by auto. *See also State v. Muniz,* 118 *N.J.* 319, 332, 571 *A.*2d 948 (1990) (concluding that jury should be informed that there are lesser-included motor-vehicle offenses to be determined solely by court). Other examples arise. In *State v. Grunow,* 102 *N.J.* 133, 506 *A.*2d 708 (1986), even though the defendant could not be charged with murder (he had been previously acquitted of that offense by a jury), we held that the jury on retrial must nevertheless consider the available verdict of passion/provocation manslaughter, a lesser-included offense of the uncharged murder. And in *State v. Bowens,* 108 *N.J.* 622, 640, 532 *A.*2d 215 (1987), we explained that even though a jury could not return a verdict of manslaughter based on imperfect self defense, the jury must nevertheless consider all the evidence of uncertainty in the defendant's mind in deciding whether the State had proved each and every element of the offense charged beyond a reasonable doubt.

In those and many other circumstances we trust juries to follow instructions. *See, e.g., State v. Marshall,* 123 *N.J.* 1, 148–50, 586 *A.*2d 85 (1991) (holding that jury instruction adequately informed jury of its responsibility to sentence defendant to death); *State v. Winter,* 96 *N.J.* 640, 649, 477 *A.*2d 323 (1984) (holding that jury is capable of following curative instruction to ignore prejudicial matter). In a case such as this the jury will be told that the defendant has been charged only with murder. The jury may then conclude that defendant had committed a crime in accordance with the definitions of those offenses (murder and the lesser-included offenses) presented to it. Finally, the jury will be instructed that if the offense he or she committed was not murder, the jury must return a verdict of not guilty of murder.

Just as there is no constitutional right to be tried without a jury, *State v. Dunne,* 124 *N.J.* 303, 590 *A.*2d 1144 (1991), there is no constitutional right to deceive a jury. The majority's analogy to the sentencing posture, *ante* at 60–61, 618 *A.*2d 323, is unpersuasive. Although the jury will not know the range of punishment, it knows that its verdict, barring legal error, will stand.

We have been particularly insistent about maintaining the singular role of juries in the administration of justice. We have insisted that trial courts are bound "to make absolutely certain [that] the jury is aware, not simply of the consequences of its actions, but of its total responsibility for the judgment." *State v. Ramseur,* 106 *N.J.* 123, 316, 524 *A.*2d 188 (1987). So solemn is the jurors' responsibility that we do not permit them to be misled by consideration of issues not proper for their deliberations. Thus, we will not deliver an instruction on a criminal charge when there is no evidence to support the instruction. *State v. Christener,* 71 *N.J.* 55, 362 *A.*2d 1153 (1976). In *Christener,* this Court reasoned:

> It must be assumed that the jury inferred by the giving of such an instruction that the elements of that charge were present in the case. Jurors are not skilled in legal techniques. They welcome an opportunity to compose differences and agree upon a compromise verdict.

[*Id.* at 73, 362 *A*.2d 1153 (citation omitted).]

Lest the jury be misled, we will not let a jury return a partial verdict unless the jury intended the verdict to be final and it fully understands the significance of such an action. *State v. Shomo*, 129 *N.J.* 248, 609 *A*.2d 394 (1992). In short, there is simply no substitute for a jury verdict, "[f]or the verdict is the *definitive* answer given by the jury to the court concerning matters of fact committed to the jury for [its] deliberation and determination." *State v. Williams*, 89 *N.J.L.* 234, 237, 98 *A*. 416 (E. & A.1916) (emphasis added).

There is no insoluble dilemma here; there is a problem that can be handled by instructing the jury accurately with respect to its function. Just as in *Muniz, Rivers,* and *Brown,* we can trust the jury here to discharge its functions. The Legislature has solved the problem by enacting legislation that in the future removes all time bars for the offenses of aggravated manslaughter and manslaughter. *See N.J.S.A.* 2C:1–6 (amended by *L.* 1988, *c.* 68). In transitional cases such as this, defendants are entitled to waive the defense of the statute of limitations and have the lesser-included offenses submitted to the jury. If defendants choose not to waive the defense, defendants may not have it both ways. They may not have the lesser-included offenses submitted to the jury with a reservation of right to annul its verdict. Neither defendants nor the court should be able to trick jurors into thinking that they are discharging one of the most profound responsibilities of a free society when in fact they are not. A fully informed jury can be trusted to discharge its functions appropriately.

It may be unfair, however, to one such as this defendant, who had to predict what the rule of law would be, to insist on the finality of his election not to waive the statute of limitations defense. That aspect of the case was compounded by a misleading emphasis in the trial court's charge to the jury. The court charged that *"because* of the Statute of Limitations if you find * * * [the manslaughter offenses established] you *must* find the defendant not guilty [of murder]." (Emphasis added.)

In reality, it is not the Statute of Limitations that causes the defendant to be acquitted of murder but the defendant's fair-trial right to have the jury consider on the basis of all the evidence whether he may have been guilty of an offense other than murder.

I can thus concur in the Court's judgment requiring a new trial but not in an opinion that would allow the trial court to withhold from the jury the consequences of its verdict.

Justices GARIBALDI and STEIN join in this opinion.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER and POLLOCK—4.

Justices O'HERN, GARIBALDI and STEIN, concur in part and dissent in part—3.